UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| LINDA LAWRENCE wife of/and<br>CLEMENT F. PERSCHALL, JR. | CIVIL ACTION |
| VERSUS | NO: 06-1072 |
| FIDELITY NATIONAL INSURANCE<br>COMPANY ET AL. | SECTION: J(4) |

**ORDER**

Before the Court are the motions: (1) **Motion for Summary Judgment by Eagan Insurance Agency, Inc. (Rec. Doc. 48)**; (2) **Motion for Summary Judgment (Rec. Doc. 49)** filed by Fidelity National Insurance Company; and **(3) Motion for Partial Summary Judgment (Rec. Doc. 50)** filed by Plaintiffs. These motions, which were all opposed, were set for hearing without oral argument on May 30, 2007. Having reviewed the motions, the memoranda of counsel, and applicable law, the Court finds that the defendants' motions for summary judgment should be granted, and Plaintiffs' motion should be denied.

<u>Procedural History and Background Facts</u>

On March 2, 2006, Plaintiffs Linda Lawrence and Clement F. Perschall, Jr. filed suit against Fidelity National Insurance Company ("Fidelity") and Eagan Insurance Agency, Inc. ("Eagan"), claiming damages for breach of fiduciary duty, detrimental reliance, negligence, and breach of contract. Specifically, Plaintiffs claim that Eagan and Fidelity breached an obligation

to offer them the best flood coverage at the best price when it failed to inform them that they were eligible for a Preferred Risk Policy ("PRP") through the National Flood Insurance Program ("NFIP"), which could provide them with maximum policy limits for less than their current premium payments. Plaintiffs claim that because of this failure, they had insufficient flood coverage for the damage caused to their home by Hurricane Katrina.  Plaintiffs argue that they are entitled to the difference between the maximum policy limits and their actual policy limits.  Plaintiffs also argue that they are entitled to reimbursement for overpayment of premiums.

Discussion

**Eagan's Motion for Summary Judgment (Rec. Doc. 48):**

Eagan claims Plaintiffs base their entire claim on the premise that it had an obligation to offer them the best insurance coverage at the best price. Eagan notes that Plaintiffs have made no allegations that it failed to procure the coverage they requested. Eagan asserts that Louisiana law imposes no such duty on insurance agents. Therefore, Eagan argues that Plaintiffs' claims against it fail as a matter of law.  Further, Eagan notes that even if the Court were to determine that Plaintiffs have successfully alleged valid causes of action against it, their claims are perempted under Louisiana Revised Statute 9:5606.

Eagan argues that Plaintiffs' claims are perempted by the

three year peremptive period because it first procured the flood insurance policy at issue in this lawsuit prior to September 14, 1996, (See Exhibit 1 to Eagan motion), which Plaintiffs then renewed from year after year. Eagan notes that Plaintiffs do not claim that Eagan made any representation at all about their flood coverage between the original procurement of the policy and Hurricane Katrina. Thus, Plaintiffs' claims arising out of any misrepresentation regarding their flood insurance policy are perempted by the three year peremptive period of La. R.S. § 9:5606.

In opposition, Plaintiffs claim that Eagan's motion for summary judgment completely ignores its obligations under the NFIP as an agent for Fidelity.  Plaintiffs assert that Eagan knew that Plaintiffs' flood policy was written under the NFIP and it had knowledge of the various regulations governing the NFIP because the reverse side of the renewal notice of the 2004- 2005 year (discussed in detail hereinafter), directs one to contact the insurance agent "to determine if your building/contents qualify for the [PRP]."  Thus, Plaintiffs claim that if Eagan was to be contacted, it must have known of the criteria for writing a PRP.  Plaintiffs claims that possessing this knowledge required Eagan to, prior to renewal, review its book of business to determine if there were customers in zones B, C, or X who were entitled to a preferred rate premium.  Plaintiffs claim Eagan was

3

to offer them the opportunity to switch at renewal and save premiums; however, Eagan did not do so.

In response to Eagan's peremption arguments, Plaintiffs claims that no notice was given to them telling them that they could purchase a flood policy with maximum limits for $314.00 in lieu of paying twice that amount for lesser coverage during that time frame. It is not until after their property was damaged in Hurricane Katrina that they received information from Eagan that they were entitled to maximum coverage at a reduced rate.  Thus, Plaintiffs assert that both the one year test and three year test are properly satisfied.

This Court concludes that Eagan is entitled to summary judgment as a matter of law.  As Judge Vance noted in Dobson v. All State Ins. Co., 2006 WL 2078423, *10 (E.D. La.), no case imposes a duty on an agent to identify a client's needs and advise him whether he is underinsured or carries the correct type of coverage.  Plaintiffs' claims against Eagan consist of those types of allegations.  In Motors Ins. Co. v. Bud's Boat Rental, Inc., 917 F.2d 199, 205 (5th Cir. 1990), the Fifth Circuit noted, "the client is himself considered responsible for adequately advising the agent of the coverage needed and for reading the clear provisions of the insurance policy."  Eagan, thus, had no duty to review Plaintiffs' policy, determine, and advise them that they could obtain maximum coverage for a lesser price based

on their eligibility for a PRP through the NFIP.

In further support of judgment in favor of Eagan is the fact that Plaintiffs' claims are perempted.  Any right to such claims against Eagan that Plaintiff may have had at one time no longer exists. Louisiana Revised Statute 9:5606 provides a one-year/three-year peremptive period for claims against insurance agents. The statute provides, in relevant part:

> No action for damages against any insurance agent, broker, solicitor, or other similar licensee under this state, whether based upon tort, or breach of contract, or otherwise, arising out of an engagement to provide insurance services shall be brought unless filed in a court of competent jurisdiction and proper venue within one year from the date of the alleged act, omission, or neglect, or within one year from the date that the alleged act, omission, or neglect is discovered or should have been discovered. However, even as to actions filed within one year from the date of such discovery, in all events actions shall be filed at the latest within three years from the date of the alleged act, omission, or neglect.

La. Rev. Stat 9:5606(A).

Here, Plaintiffs' claims are perempted by the three year peremptive period as Eagan first procured the flood insurance policy at issue in this lawsuit prior to September 14, 1996, (See Exhibit 1 to Eagan motion).  This policy was renewed by Plaintiffs year after year.  Biggers v. Met. P & C Ins. Co., 886 So.2d 1179, 1183 (holding that peremptive period, applicable to the insured's negligence suit against agent, began when insured purchased policy). In addition, the fact that Plaintiffs renewed

the policy each year does not toll the one-year peremptive period under well-settled Louisiana law. Bel v. State Farm Mut. Auto. Ins. Co., 845 So.2d 377 (La .App.1st.Cir.2003)("[t]herefore, we find that the insurance policy renewals do not constitute separate and distinct torts, commencing the peremptive period anew at each renewal"); Biggers, 886 So.2d at 1183 (peremptive period applicable to insured's negligence suit against agent began when plaintiff purchased policy, notwithstanding subsequent renewals); Bordelon v. Indep. Order of Foresters, No. 05-2640, 2005 WL 3543815 (E.D.La. 2005)(peremptive period begins to run when policy is acquired). Eagan is entitled to summary judgment as a matter of  law.

**Fidelity's Motion for Summary Judgment (Rec. Doc. 49):**

Fidelity argues that Plaintiffs' claims that it had a fiduciary duty to sell them a PRP are baseless. First, Fidelity notes that it is the fiduciary of FEMA - not of Plaintiffs. Further, Fidelity notes that the Supreme Court in Federal Crop. Ins. v. Merrill, 332 U.S. 384, 85 (1947), held that participants in federal insurance programs are charged with knowledge of the laws governing those programs. Fidelity claims that precedent requires Plaintiffs to make certain that they fully understand the terms and conditions for participating in the NFIP. Fidelity claims that because Plaintiffs did not fulfill this obligation, it is entitled to summary judgment as a matter of law.

Also, Fidelity asserts that FEMA has a regulatory bar to detrimental reliance claims. See Wright v. Allstate Ins. Co., 415 F.3d 384 (5th Cir. 2005). Also in Wright, the Fifth Circuit, citing Office of Personnel Management v. Richmond, 496 U.S. 414, 426 (1990), held that the doctrine of equitable estoppel was "inapplicable" as courts are not free to grant money remedies in NFIP cases that are not authorized by Congress. Based on this reasoning, the Fifth Circuit held that detrimental reliance extra-contractual claims are preempted. Fidelity further claims that Plaintiffs' state law based claims of negligence or detrimental reliance are barred and preempted by federal law.

Next, Fidelity argues that Plaintiffs' arguments are further baseless because it informed Plaintiffs directly of the maximum available coverage as well as the availability of the PRP. Specifically, Fidelity claims that Plaintiffs had actual notice and knowledge of the availability of the PRP. Plaintiffs admit to receiving a notice from Fidelity to renew the policy, which offered them the ability to increase the limits on the renewal policy over the limits of the then policy. Plaintiffs admit to receiving this notice prior to the anniversary date for the renewal of their flood policy. Plaintiffs further admit that they elected the inflation option and increased their coverage to $175,100 for structure and to $32,600.00 for contents, paying a premium of $660.00. (Complaint, ¶ XVI). Absent from Plaintiffs'

Complaint is the language found on the second page of their renewal notice, which states:

> IMPORTANT POLICYHOLDER NOTIFICATION POTENTIAL SAVINGS ON YOUR FLOOD INSURANCE POLICY
>
> The Preferred Risk Policy is a reduced premium policy for properties located in non-special flood hazard areas (B, C and X zones). This policy offers pre-determined amounts of coverage for set premium amounts.
>
> *   *   *
>
> A current policy cannot be endorsed to a Preferred Risk Policy. A new application must be completed and signed by your agent and forwarded with the documentation confirming eligibility along with the appropriate premium. To avoid a potential lapse in coverage, this must be done prior to the renewal date of the existing policy.
>
> *Contact your insurance agent to determine if your building/contents qualify for the Preferred Risk Policy. They can assist you in taking advantage of the savings this program offers.*

(Exhibit B to Fidelity motion, <u>emphasis added</u>).  Specifically, this statement informed policy holders of the existence of the PRP program and, according to Fidelity, was clearly displayed and was applicable to the coverage period during which Hurricane Katrina damaged the Plaintiffs' home. Fidelity notes that the notice instructed policy holders to contact their insurance agent to determine if they are eligible for a PRP (not all policyholders that reside in B, C or X zone qualify for a PRP).

8

Plaintiffs did not inquire about their eligibility and Fidelity claims that they failed to fulfill the requirements of familiarizing themselves with the federal program in which they participated.  Fidelity claims this entitles it to summary judgment.

Fidelity also argues that Plaintiffs had actual and constructive knowledge of the coverage limits prior to the renewal notice issued by Fidelity for the 2004-2005 policy period.  The premium renewal notice for the period of 2003-2004 clearly informed Plaintiffs that the "Maximum Available" coverage was $250,000 for building and $100,000 for contents. (Exhibit C to Fidelity motion).  Again, Fidelity notes that Plaintiffs did not elect to pursue additional coverage under their SFIP and failed to familiarize themselves with the provisions and requirements of their federal insurance policy.  Fidelity also notes that in addition to that specific notice, the maximum limits are established at 44 C.F.R. §61.6, and Plaintiffs are charged with such knowledge under applicable jurisprudence and La. Civil Code Article 5.

Last, in anticipation of the argument from Plaintiffs that Fidelity did not follow the Federal Insurance Administration ("FIA") marketing guidelines for WYO companies (specifically - Guideline Number 2 provides in part, "Make sure your agents know about the Preferred Risk Policy. Instead of turning down a flood

insurance sale when someone calls, make sure your agents are ready to tell them about the Preferred Risk Policy (PRP), which is easy to write and inexpensive..." Fidelity claims that Plaintiffs' reliance on the FIA Marketing Guidelines is misplaced because those are guidelines - not mandates. In fact, Fidelity notes that the Guidelines clearly state on page one that they are not mandatory:

> These guidelines are not a mandated list of activities. Rather they reflect the accepted and effective marketing practices used by successful companies throughout the property and casualty insurance industry.

(Exhibit D to Fidelity motion).  Thus, Fidelity claims that summary judgment is appropriate in this matter.

In opposition, Plaintiffs claim that Fidelity is responsible for compliance with guidance issued by FEMA relating to the NFIP and for complying with marketing guidelines established by FIA. Plaintiffs assert that Fidelity breached its duty to Plaintiffs because the marketing guidelines were not followed (i.e., the policyholders' account was not reviewed at the time of renewal to determine if a PRP was applicable).  Plaintiffs also claim that Fidelity failed in its obligation to train its agents to make sure that they were aware of the PRP.  Plaintiffs claim Fidelity knew what the chargeable rates were because it received underwriting bulletins, producer's manuals, and marketing information, which listed the criteria for writing a policy with

a PRP.

Plaintiffs admit receiving the renewal notice for the 2004 - 2005 policy period.  They also admit that the renewal notice contains references to a PRP shown on the reverse side.  However, Plaintiffs question whether this information was presented clearly and conspicuously.  Further, Plaintiffs claim that even had they noticed and read the back side of the form, the language provides no meaningful notice that a PRP is any better than the two options presented to them on the front of the application.

This Court concludes that Plaintiffs' claims for breach of a fiduciary duty fail as a matter of law.  Fidelity did not have a duty to sell Plaintiffs a PRP.  The only fiduciary duty owed by Fidelity was owed to FEMA - not to Plaintiffs. See 44 C.F.R. § 62.23(f).

As for Plaintiffs' other claims against Fidelity, they fail because, as participants in a federal insurance program, Plaintiffs had a duty to make certain that they fully understood the terms and conditions of the NFIP. See <u>Federal Crop. Ins. v. Merrill</u>, 332 U.S. 384, 85 (1947). Plaintiffs cannot claim that they fulfilled that legal duty, became specifically aware of the provisions and coverages available under the NFIP, and then assert that it was Fidelity's responsibility to insure that they had purchased the best possible coverage available.

In fact, the Court finds that Plaintiffs had actual notice

and knowledge of the availability of the PRP. Plaintiffs admit to receiving a notice from Fidelity to renew the policy, which offered them the ability to increase the limits on the renewal policy over their existing limits. Plaintiffs admit to receiving this notice prior to the anniversary date for the renewal of their flood policy. Plaintiffs further admit that they elected the inflation option and increased their coverage to $175,100 for structure and to $32,600.00 for contents, paying a premium of $660.00. (Complaint, ¶ XVI). The renewal notice also contained the following language, "Contact your insurance agent to determine if your building/contents qualify for the Preferred Risk Policy. They can assist you in taking advantage of the savings this program offers." (Exhibit B to Fidelity motion). Thus, the notice informed Plaintiffs of the existence of the PRP program. The fact that this language was on the reverse side of the notice does not makes it unclear and inconspicuous. Because Plaintiffs did not inquire about their eligibility for a PRP, they should not now be allowed to pass the consequences of that oversight on to Fidelity. The Court also finds that Plaintiffs were aware or should have been aware that the maximum flood coverage amount was $250,000 for building and $100,000 for contents. Aside from this being somewhat common knowledge, the premium renewal notice for the period of 2003-2004 clearly informed Plaintiffs that the "Maximum Available" coverage was

$250,000 for building and $100,000 for contents. (Exhibit C to Fidelity motion). Plaintiffs could have purchased more insurance; however, they chose not to do so.

As for Plaintiffs' argument that Fidelity did not follow the FIA marketing guidelines for WYO companies, those are merely guidelines - not requirements. In fact, the Guidelines clearly state on page one that they are not mandatory.

Because Plaintiffs did not properly familiarize themselves with the NFIP, they cannot successfully assert a detrimental reliance claim or any other extra-contractual state law claim. This conclusion is further strengthened by Fifth Circuit precedent that holds that extra-contractual state law claims that stem from an insurer's handling of an insured's claim for flood damages are preempted by the NFIA. <u>See Wright v. Allstate Ins. Co.</u>, 415 F.3d 384, 389 (5th Cir. 2005). Thus, Fidelity's motion should be granted in its entirety.

**<u>Plaintiffs' Motion for Partial Summary Judgment (Rec. Doc. 50):</u>**

For the same reasons that this Court finds that the motions of Fidelity and Eagan should be granted, it finds that Plaintiffs' cross motion should be denied. Accordingly,

**IT IS ORDERED** that the **Motion for Summary Judgment by Eagan Insurance Agency, Inc. (Rec. Doc. 48)** should be and is hereby **GRANTED**.

**IT IS FURTHER ORDERED** that the **Motion for Summary Judgment**

**(Rec. Doc. 49)** filed by Fidelity should be and hereby is **GRANTED**.

**IT IS FURTHER ORDERED** that the **Motion for Partial Summary Judgment (Rec. Doc. 50)** filed by Plaintiffs should be **DENIED**.

New Orleans, Louisiana this 8th day of June, 2007.

_____
CARL J. BARBIER
UNITED STATES DISTRICT JUDGE